**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ERIKA COCKRELL, for the Estate of Dennis F. Cockrell, | ) Case No. CV 13-2072 SC<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART DEFENDANT'S<br>) <u>MOTION TO DISMISS</u> |
| Plaintiff, | ) |
| v. | ) |
| WELLS FARGO BANK, N.A., and Does 1-100, inclusive, | ) |
| Defendants. | ) |

I.   **INTRODUCTION**

    This is a foreclosure dispute.  Now before the Court is
Defendant Wells Fargo Bank, N.A.'s ("Defendant") motion to dismiss
Plaintiff Erika Cockrell's ("Plaintiff") complaint.  ECF No. 1 Ex.
A ("Compl."); ECF No. 4 ("MTD").  The motion is fully briefed.  ECF
Nos. 10 ("Opp'n"), 15 ("Reply").  For the reasons discussed below,
Defendant's motion is GRANTED in part and DENIED in part.
///
///
///

**United States District Court**
For the Northern District of California

## II.  **BACKGROUND**

In December 2005, Dennis F. Cockrell obtained a loan from Defendant, secured by a deed of trust against his home.  ECF No. 5 ("Def.'s RJN") Ex. A ("DOT").  In December 2011, Mr. Cockrell asked Defendant for a loan modification to obtain a fixed interest rate loan, since his loan's monthly payments and interest rates reset annually.  Compl. ¶ 10.  Defendant's agent Anthony Garcia allegedly told Mr. Cockrell that he could obtain a loan modification guaranteeing fixed rates if he went late on his monthly payments, and that if he did go late, Defendant would neither report Mr. Cockrell for nonpayment nor accelerate his loan.  Id. ¶ 11.  Mr. Cockrell was skeptical, so he applied for a loan modification while also making payments, but Defendant denied this application around April 2012.  Id. ¶ 12.  Defendant's agent Mr. Garcia told Mr. Cockrell that his application was denied because he was current on his payments, and that the earlier promise not to take action in response to nonpayment still stood.  Id.  After this discussion, Mr. Cockrell missed his first payment in May 2012, hoping to obtain a loan modification.  Id.  Shortly after that, he received a Notice of Intent to Accelerate and learned that Defendant had reported him late for the missed payment.  Id. ¶ 2013.

Sadly, Mr. Cockrell fell ill and passed away in June 2012. Compl. ¶ 15.  Plaintiff, one of Mr. Cockrell's children, sued Defendant on behalf of Mr. Cockrell's estate, asserting causes of action for (1) breach of the covenant of good faith and fair dealing, (2) promissory estoppel, (3) breach of contract, (4) intentional infliction of emotional distress, and (5) unfair competition under California's Unfair Competition Law ("UCL"), Cal.

1  Bus. & Prof. Code §§ 17200, <u>et seq</u>.

2

3  **III.   <u>LEGAL STANDARD</u>**

4       A motion to dismiss under Federal Rule of Civil Procedure

5  12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

6  <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

7  on the lack of a cognizable legal theory or the absence of

8  sufficient facts alleged under a cognizable legal theory."

9  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

10 1988).  "When there are well-pleaded factual allegations, a court

11 should assume their veracity and then determine whether they

12 plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>

13 <u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

14 must accept as true all of the allegations contained in a complaint

15 is inapplicable to legal conclusions.  Threadbare recitals of the

16 elements of a cause of action, supported by mere conclusory

17 statements, do not suffice." <u>Id.</u> at 678 (citing <u>Bell Atl. Corp. v.</u>

18 <u>Twombly</u>, 550 U.S. 544, 555 (2007)).  The allegations made in a

19 complaint must be both "sufficiently detailed to give fair notice

20 to the opposing party of the nature of the claim so that the party

21 may effectively defend against it" and "sufficiently plausible"

22 such that "it is not unfair to require the opposing party to be

23 subjected to the expense of discovery." <u>Starr v. Baca</u>, 652 F.3d

24 1202, 1216 (9th Cir. 2011).

25

26 **IV.   <u>DISCUSSION</u>**

27      Defendant argues that the Court should dismiss Plaintiff's

28 case because (1) Plaintiff lacks standing to sue, (2) Plaintiff's

United States District Court
For the Northern District of California

1  state law claims are preempted by federal law, and (3) Plaintiff
2  fails to state claims for any of the complaint's causes of action.

3      **i.  Standing**

4      Defendant claims that Plaintiff lacks standing to bring this
5  case because she has no legal authority to litigate claims on her
6  father's estate's behalf.  Defendant cites California Probate Code
7  section 9820, which says that a "personal representative," such as
8  an estate's executor or administrator, can commence actions on
9  behalf of the estate.  Reply at 1.  Defendant goes on to raise
10 several legal arguments that are inapposite here, because Plaintiff
11 has pled that she is the executor and administrator of Mr.
12 Cockrell's estate, and that she has supplied Defendant with papers
13 proving as much.  See Compl. ¶¶ 3, 5, 16; see also Sacks v. Office
14 of Foreign Assets Control, 466 F.3d 764, 771 (9th Cir. 2006) ("To
15 survive a rule 12(b)(6) motion to dismiss, [plaintiff] must allege
16 facts in [the complaint] that, if proven, would confer standing
17 upon [her].")  The Court finds that Plaintiff has standing to bring
18 this action.

19     **ii.  Preemption**

20     Defendant contends that Plaintiff's state law claims are
21 preempted by the federal Home Owner's Loan Act ("HOLA"), which is
22 overseen by the Office of Thrift Supervision ("OTS").  MTD at 1-6.
23 Under HOLA, Congress gave OTS authority to issue regulations
24 concerning thrifts such as World Savings Bank, Defendant's
25 predecessor in interest.  See 12 U.S.C. 1464; Silvas v. E*Trade
26 Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008).

27     Pursuant to HOLA, OTS promulgated a regulation stating that
28 OTS "occupies the entire field of lending regulation for federal

**United States District Court**
For the Northern District of California

4

savings associations." 12 C.F.R. § 560.2(a). The regulation
further provides that "federal savings associations may extend
credit as authorized under federal law . . . without regard to
state laws purporting to regulate or otherwise affect their credit
activities." Id. Preempted state laws include those relating to
"[t]he terms of credit, including amortization of loans and the
deferral and capitalization of interest," "[d]isclosure and
advertising, including laws requiring specific statements,
information, or other content to be included in credit application
forms," and "[p]rocessing, origination, servicing, sale or purchase
of, or investment or participation in, mortgages." Id. § 560.2(b).

However, state "contract and commercial law," "real property
law," and "tort law," among other things, "are not preempted to the
extent that they only incidentally affect lending operations . . .
or are otherwise consistent with the purpose [of the regulation]."
Id. § 560.2(c).

OTS has outlined a framework for evaluating whether or not a
state law is preempted under 12 C.F.R. § 560.2:

> When analyzing the status of state laws
> under § 560.2, the first step will be to
> determine whether the type of law in
> question is listed in paragraph (b). If so,
> the analysis will end there; the law is
> preempted. If the law is not covered by
> paragraph (b), the next question is whether
> the law affects lending. If it does, then,
> in accordance with paragraph (a), the
> presumption arises that the law is
> preempted. This presumption can be reversed
> only if the law can clearly be shown to fit
> within the confines of paragraph (c). For
> these purposes, paragraph (c) is intended to
> be interpreted narrowly. Any doubt should be
> resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

In <u>Silvas</u>, the Ninth Circuit employed this framework to determine whether a plaintiff's UCL claims, "as applied," were preempted under OTS regulations. 514 F.3d at 1004-07. In doing so, "the Ninth Circuit focused not on the nature of the cause of action allegedly preempted, but rather on the 'functional effect upon lending operations of maintaining the cause of action.'" <u>Rumbaua v. Wells Fargo Bank, N.A.</u>, No. 11-1998 SC, 2011 WL 3740828, at *7 (N.D. Cal. Aug. 25, 2011) (citation omitted). The pertinent question was whether applying a state law to a federal savings association would "impose requirements" concerning activities regulated by OTS. <u>Id.</u> This Court has previously held that claims "premised on fraud or promises made by Wells Fargo . . . are not necessarily preempted, because the only 'requirement' they impose on federal savings banks is that they be held responsible for the statements they make to their borrowers." <u>Id.</u> at 20.

HOLA governs the loan at issue here, since it originated with Defendant's predecessor WSB, a federal savings bank subject to HOLA and OTS regulations. Def.'s RJN Exs. B-F (documents describing the history of Defendant's corporate structure). Therefore, even though Defendant changed name and form several times, and Defendant itself is not subject to HOLA and OTS regulations, the loan's origination from a HOLA-regulated entity makes HOLA applicable in this case. <u>See</u> <u>Appling v. Wachovia Mortg., FSB</u>, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010).

Defendant argues that HOLA preempts all of Plaintiff's state law claims because they would impose requirements related to loan servicing, and such an imposition would be barred by HOLA. MTD at 10-11 (citing 12 C.F.R. § 560.2(b)). HOLA preemption is not so

**United States District Court**
For the Northern District of California

1 | broad.  Plaintiff's claims in this case may "relate" to loan
2 | servicing, a category that appears in 12 C.F.R. § 560.2(b).
3 | However, the claims are tort causes of action whose effects on loan
4 | servicing are incidental, and functionally, the causes of action
5 | that Plaintiff asserts serve only to make Defendant tell the truth
6 | and abide by its promises -- not to impose additional requirements
7 | specifically related to loan servicing.  <u>See</u> <u>Shaterian v. Wells</u>
8 | <u>Fargo Bank, N.A.</u>, 829 F. Supp. 2d 873, 881 (N.D. Cal. 2011).
9 | Holding otherwise, in a case like this one, could essentially
10 | permit federal savings associations to lie to their customers with
11 | impunity.  <u>Rumbaua</u>, 2011 WL 3740828, at *7.

12 |     **iii.**    <u>**Plaintiff's Breach of the Implied Covenant Claim**</u>

13 |     "The covenant of good faith and fair dealing, implied by law
14 | in every contract, exists merely to prevent one contracting party
15 | from unfairly frustrating the other party's right to receive the
16 | benefits of the agreement actually made." <u>Guz v. Bechtel Nat.</u>
17 | <u>Inc.</u>, 24 Cal. 4th 317, 349 (Cal. 2000).  The covenant thus prevents
18 | a contracting party from taking an action that, although
19 | technically not a breach, frustrates the other party's right to the
20 | benefit of the contract.  <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App.
21 | 3d 1136, 1153 (Cal. Ct. App. 1990).  The covenant "cannot impose
22 | substantive duties or limits on the contracting parties beyond
23 | those incorporated in the specific terms of their agreement." <u>Guz</u>,
24 | 24 Cal. 4th at 349-50.  The elements of a claim for breach of the
25 | covenant of good faith and fair dealing are:

26 |
27 |         (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was
28 | excused from having to do; (3) all conditions

1  required for the defendant's performance had
   occurred; (4) the defendant unfairly interfered
2  with the plaintiff's right to receive the
   benefits of the contract; and (5) the
3  defendant's conduct harmed the plaintiff.

4  <u>Woods v. Google, Inc.</u>, -- F. Supp. 2d --, 2012 WL 3673319, at *8

5  (N.D. Cal. 2012) (citing Judicial Counsel of California Civil Jury

6  Instructions § 325 (2011)).

7       Plaintiff alleges that Defendant's promise to forgo action

8  against Mr. Cockrell if he went late on her payments impeded his

9  contractual obligation to pay her loans and interfered with his

10 rights to receive the benefits of those agreements.  Opp'n at 5.

11 As the Court has repeatedly held, this argument fails unless the

12 defendant actively hindered a plaintiff's obligation to pay his

13 loans.  <u>See</u> <u>Harvey v. Bank of Am., N.A.</u>, No. 12-3238 SC, 2013 WL

14 632088, at *3 (N.D. Cal. Feb. 20, 2013) (citing <u>Tanner v. Title</u>

15 <u>Ins. & Trust Co.</u>, 20 Cal. 2d 814, 824 (Cal. 1942)).  The Court has

16 noted that the same circumstances that may support a promissory

17 estoppel claim could fail to support a breach of the implied

18 covenant claim: in some circumstances, actionable dishonesty is not

19 necessarily an active interference with the right to receive a

20 contract's benefits.  <u>See</u> <u>Ren v. Wells Fargo Bank, N.A.</u>, No. 13-

21 0272 SC, 2013 WL 2458368, at *3 (N.D. Cal. June 7, 2013).  This

22 claim is therefore DISMISSED with leave to amend, so that Plaintiff

23 has the opportunity to plead facts showing that Defendant actively

24 hindered Mr. Cockrell's loan payments.

25      **iv.**   **Plaintiff's Promissory Estoppel Claim**

26 "Promissory estoppel requires: (1) a promise that is clear and

27 unambiguous in its terms; (2) reliance by the party to whom the

28 promise is made; (3) the reliance must be reasonable and

**United States District Court**
For the Northern District of California

1  foreseeable; and (4) the party asserting the estoppel must be

2  injured by his or her reliance." <u>Boon Rawd Trading Int'l Co., Ltd.</u>

3  <u>v. Paleewong Trading Co., Inc.</u>, 688 F. Supp. 2d 940, 953 (N.D. Cal.

4  2010).  "The purpose of this doctrine is to make a promise that

5  lacks consideration (in the usual sense of something bargained for

6  and given in exchange) binding under certain circumstances."  <u>Id.</u>

7      Plaintiff alleges that in December 2010 and April 2011,

8  Defendant's agent Anthony Garcia told Mr. Cockrell that he could

9  cure the defects that resulted in the denial of his loan

10 modification application if he went late on his payments, and that

11 Defendant would take no action against him if he did so.  Compl. ¶¶

12 29-31.  Plaintiff adds that Mr. Cockrell foreseeably relied on

13 Defendant's promises because of their consistency across several

14 months, Defendant's agent's apparent authority, and Mr. Cockrell's

15 desire to modify his loan's terms.  <u>Id.</u> ¶¶ 31-34; Opp'n at 9-11.

16 Further, Plaintiff alleges that Mr. Cockrell was harmed by

17 Defendant's acceleration of the loan and reporting of Mr. Cockrell

18 to the credit reporting agencies.  <u>Id.</u>  Defendant claims that

19 Plaintiff cannot identify a clear and unambiguous promise, and

20 cites a non-binding case holding a different plaintiff's

21 allegations of promissory estoppel implausible.  Reply at 5-6.

22     The Court finds that Plaintiff's allegations set forth a prima

23 facie promissory estoppel claim.  They are plausible and provide

24 enough detail to support Plaintiff's cause of action.

25          **v.   <u>Plaintiff's Breach of Contract Claim</u>**

26     "To state a cause of action for breach of contract, a party

27 must plead [1] the existence of a contract, [2] his or her

28 performance of the contract or excuse for nonperformance, [3] the

1   defendant's breach, and [4] resulting damage." <u>Mora v. U.S. Bank,</u>

2   <u>N.A.</u>, No. 11-6598 SC, 2012 WL 2061629, *6 (N.D. Cal. June 7, 2012)

3   (citing <u>Harris v. Rudin, Richman & Appel</u>, 74 Cal. App. 4th 299, 307

4   (Cal. Ct. App. 1999)).

5       Plaintiff alleges that Defendant breached the DOT when it

6   refused to allow Plaintiff to take over the rights and obligations

7   of the DOT from Mr. Cockrell, because the DOT includes a section

8   concerning the rights and obligations of anyone who assumes Mr.

9   Cockrell's rights and obligations under the DOT.  Opp'n at 13;

10  Compl. ¶ 39 (citing DOT Section 11).  Defendant argues that Section

11  11 of the DOT does not create a contractual right for anyone to

12  assume the loan (including Mr. Cockrell's heirs).  Reply at 5.

13  Defendant also argues that the property secured by the DOT is not

14  the property of Plaintiff, and that Plaintiff has no standing

15  relative to the property because she is not the executor of Mr.

16  Cockrell's estate.  <u>Id.</u>

17      Defendant is wrong on both latter points, since Plaintiff is

18  Mr. Cockrell's estate's executor or administrator, and as one of

19  his children she also takes a share of ownership interest in the

20  property.  Cal. Probate Code § 6402.  However, Defendant is correct

21  that Plaintiff has failed to indicate the basis for her contractual

22  right to assume Mr. Cockrell's rights and responsibilities under

23  the DOT.  The fact that the DOT includes language governing what

24  would happen under such circumstances does not itself create a

25  right or prove that Defendant breached the DOT.  The Court cannot

26  determine, based on the pleadings or Plaintiff's opposition brief,

27  whether Plaintiff has complied with the Probate Code's requirements

28  for transference of a secured debt or obligation, or otherwise how

**United States District Court**
For the Northern District of California

1  Plaintiff claims to be subject to the section of the DOT she claims
2  that Defendant breached.  This claim is therefore DISMISSED with
3  leave to amend, so that Plaintiff can correct the pleading
4  deficiency described here.

5              vi.    **Plaintiff's IIED Claim**

6      To state a claim for intentional infliction of emotional
7  distress ("IIED"), Plaintiff must allege: "(1) extreme and
8  outrageous conduct by the defendant with the intention of causing,
9  or reckless disregard of the probability of causing, emotional
10 distress; (2) the plaintiff's suffering severe or extreme emotional
11 distress; and (3) actual and proximate causation of the emotional
12 distress by the defendant's outrageous conduct." Christensen v.
13 Super. Ct., 54 Cal. 3d 868, 903 (Cal. 1991) (quotations and
14 citations omitted).  Conduct is only "extreme and outrageous" when
15 it is "so extreme as to exceed all bounds of that usually tolerated
16 in a civilized community." Davidson v. City of Westminster, 32
17 Cal. 3d 197, 185 (Cal. 1982).

18     Plaintiff claims that Defendant is liable for IIED, because
19 Defendant allegedly induced Mr. Cockrell to go late on his payments
20 with the intention of placing him in default and ruining his
21 credit, all while knowing of Mr. Cockrell's weakened state and of
22 the fact that causing him to default would compound his health
23 problems.  Opp'n at 13-14; Compl. ¶ 43.

24     Plaintiff's allegation is not plausible.  The Court takes as
25 true Plaintiff's pleadings that bank-related stress worsened Mr.
26 Cockrell's condition, and there is no doubt that Mr. Cockrell's
27 death was a tragic loss for his family.  However, even though
28 Defendant may have known of Mr. Cockrell's health issues, Plaintiff

has not pled sufficient facts indicating that Defendant intended to cause distress to Mr. Cockrell when it accelerated his loan; that it was recklessly inconsiderate of his emotional health in doing so; or that Defendant's behavior (however self-interested or unfeeling) rose to the level of intolerable extremity that the law requires here.  Further, the ultimate cause of Mr. Cockrell's health's deterioration was apparently his doctor's prescription of improper medication.  Compl. ¶ 15.  This is a factor too far removed from Defendants' conduct to support Plaintiff's claims, and in any event, Plaintiff cannot use that physical condition as proxy for Mr. Cockrell's emotional state.

Plaintiff's IIED claim is DISMISSED with leave to amend, to provide Plaintiff the opportunity to plead sufficient facts to support this cause of action.

### vii.   **Plaintiff's UCL Claim**

The UCL prohibits unfair competition, including, inter alia, "any unlawful, unfair or fraudulent business act."  Cal. Bus. & Prof. Code § 17200.  "Because [section 17200] is written in the disjunctive, it establishes three varieties of unfair competition -- acts or practices which are unlawful, or unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007).

Plaintiff's complaint is not a model of clarity, but she appears to bring her UCL claim under the "unfairness" prong because her substantive allegations concern only unfair competition, not unlawful or fraudulent activity.  See Compl. ¶¶ 48-51.  California courts and the legislature have not specified which of several possible "unfairness" standards is the proper one, but this Court

recently found that the California Supreme Court would likely adopt the approach to unfairness provided in Camacho v. Auto. Club of S. Cal., 142 Cal. App. 4th 1394, 1402 (Cal. Ct. App. 2006), which incorporated the three factors constituting unfairness under the Federal Trade Commission Act: "(1) the injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury must be one that the consumer could not reasonably have avoided." Lyons v. Bank of America, N.A., No. 11-01232 CW, 2011 WL 3607608, at *10 (N.D. Cal. Aug. 15, 2011) (citing Camacho, 12 Cal. App. 4th at 1402).

    Plaintiff asserts that the conduct underlying all of her state law claims "constitute[] unfair competition" under the UCL.  FAC ¶¶ 48-51.  Defendant argues that Plaintiff's UCL claims should be dismissed because all of their predicate claims fail.  Reply at 9-10.  As discussed above, the Court finds that three of Plaintiff's predicate claims fail as insufficiently pled, with only the promissory estoppel claim surviving.  Consequently, Plaintiff's UCL claims premised on causes of action other than promissory estoppel are DISMISSED.  However, Plaintiff's promissory estoppel claim also states a claim for unfair competition under the UCL: the injury was substantial, no countervailing benefits to consumers or competition exist, and Plaintiff's pleading of reasonable reliance under the promissory estoppel claim also serves to show that Mr. Cockrell could not reasonably have avoided the injury in this case.

///

///

///

**United States District Court**
For the Northern District of California

V.   **CONCLUSION**

As explained above, the Court GRANTS in part and DENIES in part Defendant Wells Fargo Bank, N.A.'s motion to dismiss Plaintiff Erika Cockrell's complaint.  The Court orders as follows:

- Claim 1 (Breach of the Implied Covenant) is DISMISSED with leave to amend.
- Claim 2 (Promissory Estoppel) is undisturbed.
- Claim 3 (Breach of Contract) is DISMISSED with leave to amend.
- Claim 4 (IIED) is DISMISSED with leave to amend.
- Claim 5 (UCL) is undisturbed as to the unfair competition claim predicated on Plaintiff's promissory estoppel claim. Other UCL claims are DISMISSED with leave to amend.

Plaintiff has thirty (30) days from this Order's signature date to file an amended complaint.  If she does not, her defective claims may be dismissed with prejudice.

IT IS SO ORDERED.

Dated: July 23, 2013

_____
UNITED STATES DISTRICT JUDGE