1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
                                      )  Case No. CV 13-2072 SC
9                                     )
    ERIKA COCKRELL, for the Estate    )  ORDER GRANTING IN PART AND
10  of Dennis F. Cockrell,            )  DENYING IN PART DEFENDANT'S
                                      )  MOTION TO DISMISS
11             Plaintiff,             )
                                      )
12        v.                          )
                                      )
13  WELLS FARGO BANK, N.A., and Does  )
    1-100, inclusive,                 )
14                                    )
               Defendants.            )
15                                    )
                                      )
16  _____  )

17

18

19  I.   **INTRODUCTION**

20        This is a foreclosure dispute.  Now before the Court is

21  Defendant Wells Fargo Bank, N.A.'s ("Defendant") motion to dismiss

22  Plaintiff Erika Cockrell's ("Plaintiff") complaint.  ECF No. 1 Ex.

23  A ("Compl."); ECF No. 4 ("MTD").  The motion is fully briefed.  ECF

24  Nos. 10 ("Opp'n"), 15 ("Reply").  For the reasons discussed below,

25  Defendant's motion is GRANTED in part and DENIED in part.

26  ///

27  ///

28  ///

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

## II.   BACKGROUND

In December 2005, Dennis F. Cockrell obtained a loan from Defendant, secured by a deed of trust against his home.   ECF No. 5 ("Def.'s RJN") Ex. A ("DOT").   In December 2011, Mr. Cockrell asked Defendant for a loan modification to obtain a fixed interest rate loan, since his loan's monthly payments and interest rates reset annually.   Compl. ¶ 10.   Defendant's agent Anthony Garcia allegedly told Mr. Cockrell that he could obtain a loan modification guaranteeing fixed rates if he went late on his monthly payments, and that if he did go late, Defendant would neither report Mr. Cockrell for nonpayment nor accelerate his loan.   Id. ¶ 11.   Mr. Cockrell was skeptical, so he applied for a loan modification while also making payments, but Defendant denied this application around April 2012.   Id. ¶ 12.   Defendant's agent Mr. Garcia told Mr. Cockrell that his application was denied because he was current on his payments, and that the earlier promise not to take action in response to nonpayment still stood.   Id.   After this discussion, Mr. Cockrell missed his first payment in May 2012, hoping to obtain a loan modification.   Id.   Shortly after that, he received a Notice of Intent to Accelerate and learned that Defendant had reported him late for the missed payment.   Id. ¶ 2013.

Sadly, Mr. Cockrell fell ill and passed away in June 2012. Compl. ¶ 15.   Plaintiff, one of Mr. Cockrell's children, sued Defendant on behalf of Mr. Cockrell's estate, asserting causes of action for (1) breach of the covenant of good faith and fair dealing, (2) promissory estoppel, (3) breach of contract, (4) intentional infliction of emotional distress, and (5) unfair competition under California's Unfair Competition Law ("UCL"), Cal.

Bus. & Prof. Code §§ 17200, et seq.

**III.  LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**IV.  DISCUSSION**

Defendant argues that the Court should dismiss Plaintiff's case because (1) Plaintiff lacks standing to sue, (2) Plaintiff's

1 state law claims are preempted by federal law, and (3) Plaintiff

2 fails to state claims for any of the complaint's causes of action.

3       **i.**    <u>**Standing**</u>

4     Defendant claims that Plaintiff lacks standing to bring this

5 case because she has no legal authority to litigate claims on her

6 father's estate's behalf. Defendant cites California Probate Code

7 section 9820, which says that a "personal representative," such as

8 an estate's executor or administrator, can commence actions on

9 behalf of the estate. Reply at 1. Defendant goes on to raise

10 several legal arguments that are inapposite here, because Plaintiff

11 has pled that she is the executor and administrator of Mr.

12 Cockrell's estate, and that she has supplied Defendant with papers

13 proving as much. <u>See</u> Compl. ¶¶ 3, 5, 16; <u>see also</u> <u>Sacks v. Office</u>

14 <u>of Foreign Assets Control</u>, 466 F.3d 764, 771 (9th Cir. 2006) ("To

15 survive a rule 12(b)(6) motion to dismiss, [plaintiff] must allege

16 facts in [the complaint] that, if proven, would confer standing

17 upon [her].") The Court finds that Plaintiff has standing to bring

18 this action.

19       **ii.**    <u>**Preemption**</u>

20     Defendant contends that Plaintiff's state law claims are

21 preempted by the federal Home Owner's Loan Act ("HOLA"), which is

22 overseen by the Office of Thrift Supervision ("OTS"). MTD at 1-6.

23 Under HOLA, Congress gave OTS authority to issue regulations

24 concerning thrifts such as World Savings Bank, Defendant's

25 predecessor in interest. <u>See</u> 12 U.S.C. 1464; <u>Silvas v. E*Trade</u>

26 <u>Mortg. Corp.</u>, 514 F.3d 1001, 1005 (9th Cir. 2008).

27     Pursuant to HOLA, OTS promulgated a regulation stating that

28 OTS "occupies the entire field of lending regulation for federal

**United States District Court**
For the Northern District of California

savings associations." 12 C.F.R. § 560.2(a). The regulation further provides that "federal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities." Id. Preempted state laws include those relating to "[t]he terms of credit, including amortization of loans and the deferral and capitalization of interest," "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms," and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." Id. § 560.2(b).

However, state "contract and commercial law," "real property law," and "tort law," among other things, "are not preempted to the extent that they only incidentally affect lending operations . . . or are otherwise consistent with the purpose [of the regulation]." Id. § 560.2(c).

OTS has outlined a framework for evaluating whether or not a state law is preempted under 12 C.F.R. § 560.2:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    In Silvas, the Ninth Circuit employed this framework to

2    determine whether a plaintiff's UCL claims, "as applied," were

3    preempted under OTS regulations.  514 F.3d at 1004-07.  In doing

4    so, "the Ninth Circuit focused not on the nature of the cause of

5    action allegedly preempted, but rather on the 'functional effect

6    upon lending operations of maintaining the cause of action.'"

7    Rumbaua v. Wells Fargo Bank, N.A., No. 11-1998 SC, 2011 WL 3740828,

8    at *7 (N.D. Cal. Aug. 25, 2011) (citation omitted).  The pertinent

9    question was whether applying a state law to a federal savings

10   association would "impose requirements" concerning activities

11   regulated by OTS.  Id.  This Court has previously held that claims

12   "premised on fraud or promises made by Wells Fargo . . . are not

13   necessarily preempted, because the only 'requirement' they impose

14   on federal savings banks is that they be held responsible for the

15   statements they make to their borrowers."  Id. at 20.

16   HOLA governs the loan at issue here, since it originated with

17   Defendant's predecessor WSB, a federal savings bank subject to HOLA

18   and OTS regulations.  Def.'s RJN Exs. B-F (documents describing the

19   history of Defendant's corporate structure).  Therefore, even

20   though Defendant changed name and form several times, and Defendant

21   itself is not subject to HOLA and OTS regulations, the loan's

22   origination from a HOLA-regulated entity makes HOLA applicable in

23   this case.  See Appling v. Wachovia Mortg., FSB, 745 F. Supp. 2d

24   961, 971 (N.D. Cal. 2010).

25   Defendant argues that HOLA preempts all of Plaintiff's state

26   law claims because they would impose requirements related to loan

27   servicing, and such an imposition would be barred by HOLA.  MTD at

28   10-11 (citing 12 C.F.R. § 560.2(b)).  HOLA preemption is not so

**United States District Court**
For the Northern District of California

broad.  Plaintiff's claims in this case may "relate" to loan

servicing, a category that appears in 12 C.F.R. § 560.2(b).

However, the claims are tort causes of action whose effects on loan

servicing are incidental, and functionally, the causes of action

that Plaintiff asserts serve only to make Defendant tell the truth

and abide by its promises -- not to impose additional requirements

specifically related to loan servicing.  <u>See</u> <u>Shaterian v. Wells

Fargo Bank, N.A.</u>, 829 F. Supp. 2d 873, 881 (N.D. Cal. 2011).

Holding otherwise, in a case like this one, could essentially

permit federal savings associations to lie to their customers with

impunity.  <u>Rumbaua</u>, 2011 WL 3740828, at *7.

### iii.   <u>Plaintiff's Breach of the Implied Covenant Claim</u>

"The covenant of good faith and fair dealing, implied by law

in every contract, exists merely to prevent one contracting party

from unfairly frustrating the other party's right to receive the

benefits of the agreement actually made."  <u>Guz v. Bechtel Nat.

Inc.</u>, 24 Cal. 4th 317, 349 (Cal. 2000).  The covenant thus prevents

a contracting party from taking an action that, although

technically not a breach, frustrates the other party's right to the

benefit of the contract.  <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App.

3d 1136, 1153 (Cal. Ct. App. 1990).  The covenant "cannot impose

substantive duties or limits on the contracting parties beyond

those incorporated in the specific terms of their agreement."  <u>Guz</u>,

24 Cal. 4th at 349-50.  The elements of a claim for breach of the

covenant of good faith and fair dealing are:

> (1) the plaintiff and the defendant entered
> into a contract; (2) the plaintiff did all or
> substantially all of the things that the
> contract required him to do or that he was
> excused from having to do; (3) all conditions

required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

Woods v. Google, Inc., -- F. Supp. 2d --, 2012 WL 3673319, at *8 (N.D. Cal. 2012) (citing Judicial Counsel of California Civil Jury Instructions § 325 (2011)).

Plaintiff alleges that Defendant's promise to forgo action against Mr. Cockrell if he went late on her payments impeded his contractual obligation to pay her loans and interfered with his rights to receive the benefits of those agreements.  Opp'n at 5. As the Court has repeatedly held, this argument fails unless the defendant actively hindered a plaintiff's obligation to pay his loans.  See Harvey v. Bank of Am., N.A., No. 12-3238 SC, 2013 WL 632088, at *3 (N.D. Cal. Feb. 20, 2013) (citing Tanner v. Title Ins. & Trust Co., 20 Cal. 2d 814, 824 (Cal. 1942)).  The Court has noted that the same circumstances that may support a promissory estoppel claim could fail to support a breach of the implied covenant claim: in some circumstances, actionable dishonesty is not necessarily an active interference with the right to receive a contract's benefits.  See Ren v. Wells Fargo Bank, N.A., No. 13-0272 SC, 2013 WL 2458368, at *3 (N.D. Cal. June 7, 2013).  This claim is therefore DISMISSED with leave to amend, so that Plaintiff has the opportunity to plead facts showing that Defendant actively hindered Mr. Cockrell's loan payments.

### iv.   Plaintiff's Promissory Estoppel Claim

"Promissory estoppel requires: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and

United States District Court
For the Northern District of California

1  foreseeable; and (4) the party asserting the estoppel must be
2  injured by his or her reliance." Boon Rawd Trading Int'l Co., Ltd.
3  v. Paleewong Trading Co., Inc., 688 F. Supp. 2d 940, 953 (N.D. Cal.
4  2010).  "The purpose of this doctrine is to make a promise that
5  lacks consideration (in the usual sense of something bargained for
6  and given in exchange) binding under certain circumstances." Id.
7      Plaintiff alleges that in December 2010 and April 2011,
8  Defendant's agent Anthony Garcia told Mr. Cockrell that he could
9  cure the defects that resulted in the denial of his loan
10 modification application if he went late on his payments, and that
11 Defendant would take no action against him if he did so.  Compl. ¶¶
12 29-31.  Plaintiff adds that Mr. Cockrell foreseeably relied on
13 Defendant's promises because of their consistency across several
14 months, Defendant's agent's apparent authority, and Mr. Cockrell's
15 desire to modify his loan's terms. Id. ¶¶ 31-34; Opp'n at 9-11.
16 Further, Plaintiff alleges that Mr. Cockrell was harmed by
17 Defendant's acceleration of the loan and reporting of Mr. Cockrell
18 to the credit reporting agencies. Id. Defendant claims that
19 Plaintiff cannot identify a clear and unambiguous promise, and
20 cites a non-binding case holding a different plaintiff's
21 allegations of promissory estoppel implausible.  Reply at 5-6.
22     The Court finds that Plaintiff's allegations set forth a prima
23 facie promissory estoppel claim.  They are plausible and provide
24 enough detail to support Plaintiff's cause of action.
25          **v.   Plaintiff's Breach of Contract Claim**
26 "To state a cause of action for breach of contract, a party
27 must plead [1] the existence of a contract, [2] his or her
28 performance of the contract or excuse for nonperformance, [3] the

United States District Court
For the Northern District of California

1  defendant's breach, and [4] resulting damage." <u>Mora v. U.S. Bank,</u>
2  <u>N.A.</u>, No. 11-6598 SC, 2012 WL 2061629, *6 (N.D. Cal. June 7, 2012)
3  (citing <u>Harris v. Rudin, Richman & Appel</u>, 74 Cal. App. 4th 299, 307
4  (Cal. Ct. App. 1999)).

5      Plaintiff alleges that Defendant breached the DOT when it
6  refused to allow Plaintiff to take over the rights and obligations
7  of the DOT from Mr. Cockrell, because the DOT includes a section
8  concerning the rights and obligations of anyone who assumes Mr.
9  Cockrell's rights and obligations under the DOT.  Opp'n at 13;
10  Compl. ¶ 39 (citing DOT Section 11).  Defendant argues that Section
11  11 of the DOT does not create a contractual right for anyone to
12  assume the loan (including Mr. Cockrell's heirs).  Reply at 5.
13  Defendant also argues that the property secured by the DOT is not
14  the property of Plaintiff, and that Plaintiff has no standing
15  relative to the property because she is not the executor of Mr.
16  Cockrell's estate.  <u>Id.</u>

17      Defendant is wrong on both latter points, since Plaintiff is
18  Mr. Cockrell's estate's executor or administrator, and as one of
19  his children she also takes a share of ownership interest in the
20  property.  Cal. Probate Code § 6402.  However, Defendant is correct
21  that Plaintiff has failed to indicate the basis for her contractual
22  right to assume Mr. Cockrell's rights and responsibilities under
23  the DOT.  The fact that the DOT includes language governing what
24  would happen under such circumstances does not itself create a
25  right or prove that Defendant breached the DOT.  The Court cannot
26  determine, based on the pleadings or Plaintiff's opposition brief,
27  whether Plaintiff has complied with the Probate Code's requirements
28  for transference of a secured debt or obligation, or otherwise how

1   Plaintiff claims to be subject to the section of the DOT she claims

2   that Defendant breached.  This claim is therefore DISMISSED with

3   leave to amend, so that Plaintiff can correct the pleading

4   deficiency described here.

5          vi.     **Plaintiff's IIED Claim**

6        To state a claim for intentional infliction of emotional

7   distress ("IIED"), Plaintiff must allege: "(1) extreme and

8   outrageous conduct by the defendant with the intention of causing,

9   or reckless disregard of the probability of causing, emotional

10  distress; (2) the plaintiff's suffering severe or extreme emotional

11  distress; and (3) actual and proximate causation of the emotional

12  distress by the defendant's outrageous conduct." Christensen v.

13  Super. Ct., 54 Cal. 3d 868, 903 (Cal. 1991) (quotations and

14  citations omitted).  Conduct is only "extreme and outrageous" when

15  it is "so extreme as to exceed all bounds of that usually tolerated

16  in a civilized community." Davidson v. City of Westminster, 32

17  Cal. 3d 197, 185 (Cal. 1982).

18       Plaintiff claims that Defendant is liable for IIED, because

19  Defendant allegedly induced Mr. Cockrell to go late on his payments

20  with the intention of placing him in default and ruining his

21  credit, all while knowing of Mr. Cockrell's weakened state and of

22  the fact that causing him to default would compound his health

23  problems.  Opp'n at 13-14; Compl. ¶ 43.

24       Plaintiff's allegation is not plausible.  The Court takes as

25  true Plaintiff's pleadings that bank-related stress worsened Mr.

26  Cockrell's condition, and there is no doubt that Mr. Cockrell's

27  death was a tragic loss for his family.  However, even though

28  Defendant may have known of Mr. Cockrell's health issues, Plaintiff

**United States District Court**
For the Northern District of California

11

1  has not pled sufficient facts indicating that Defendant intended to

2  cause distress to Mr. Cockrell when it accelerated his loan; that

3  it was recklessly inconsiderate of his emotional health in doing

4  so; or that Defendant's behavior (however self-interested or

5  unfeeling) rose to the level of intolerable extremity that the law

6  requires here.  Further, the ultimate cause of Mr. Cockrell's

7  health's deterioration was apparently his doctor's prescription of

8  improper medication.  Compl. ¶ 15.  This is a factor too far

9  removed from Defendants' conduct to support Plaintiff's claims, and

10  in any event, Plaintiff cannot use that physical condition as proxy

11  for Mr. Cockrell's emotional state.

12      Plaintiff's IIED claim is DISMISSED with leave to amend, to

13  provide Plaintiff the opportunity to plead sufficient facts to

14  support this cause of action.

15          **vii.    Plaintiff's UCL Claim**

16       The UCL prohibits unfair competition, including, inter alia,

17  "any unlawful, unfair or fraudulent business act."  Cal. Bus. &

18  Prof. Code § 17200.  "Because [section 17200] is written in the

19  disjunctive, it establishes three varieties of unfair competition -

20  - acts or practices which are unlawful, or unfair, or fraudulent."

21  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554

22  (Cal. Ct. App. 2007).

23      Plaintiff's complaint is not a model of clarity, but she

24  appears to bring her UCL claim under the "unfairness" prong because

25  her substantive allegations concern only unfair competition, not

26  unlawful or fraudulent activity.  See Compl. ¶¶ 48-51.  California

27  courts and the legislature have not specified which of several

28  possible "unfairness" standards is the proper one, but this Court

**United States District Court**
For the Northern District of California

1   recently found that the California Supreme Court would likely adopt

2   the approach to unfairness provided in Camacho v. Auto. Club of S.

3   Cal., 142 Cal. App. 4th 1394, 1402 (Cal. Ct. App. 2006), which

4   incorporated the three factors constituting unfairness under the

5   Federal Trade Commission Act: "(1) the injury must be substantial;

6   (2) the injury must not be outweighed by any countervailing

7   benefits to consumers or competition; and (3) the injury must be

8   one that the consumer could not reasonably have avoided." Lyons v.

9   Bank of America, N.A., No. 11-01232 CW, 2011 WL 3607608, at *10

10  (N.D. Cal. Aug. 15, 2011) (citing Camacho, 12 Cal. App. 4th at

11  1402).

12      Plaintiff asserts that the conduct underlying all of her state

13  law claims "constitute[] unfair competition" under the UCL.  FAC ¶¶

14  48-51.  Defendant argues that Plaintiff's UCL claims should be

15  dismissed because all of their predicate claims fail.  Reply at 9-

16  10.  As discussed above, the Court finds that three of Plaintiff's

17  predicate claims fail as insufficiently pled, with only the

18  promissory estoppel claim surviving.  Consequently, Plaintiff's UCL

19  claims premised on causes of action other than promissory estoppel

20  are DISMISSED.  However, Plaintiff's promissory estoppel claim also

21  states a claim for unfair competition under the UCL: the injury was

22  substantial, no countervailing benefits to consumers or competition

23  exist, and Plaintiff's pleading of reasonable reliance under the

24  promissory estoppel claim also serves to show that Mr. Cockrell

25  could not reasonably have avoided the injury in this case.

26  ///

27  ///

28  ///

United States District Court
For the Northern District of California

**V.   CONCLUSION**

As explained above, the Court GRANTS in part and DENIES in part Defendant Wells Fargo Bank, N.A.'s motion to dismiss Plaintiff Erika Cockrell's complaint.  The Court orders as follows:

- Claim 1 (Breach of the Implied Covenant) is DISMISSED with leave to amend.
- Claim 2 (Promissory Estoppel) is undisturbed.
- Claim 3 (Breach of Contract) is DISMISSED with leave to amend.
- Claim 4 (IIED) is DISMISSED with leave to amend.
- Claim 5 (UCL) is undisturbed as to the unfair competition claim predicated on Plaintiff's promissory estoppel claim. Other UCL claims are DISMISSED with leave to amend.

Plaintiff has thirty (30) days from this Order's signature date to file an amended complaint.  If she does not, her defective claims may be dismissed with prejudice.

IT IS SO ORDERED.

Dated: July 23, 2013                   _____
                                        UNITED STATES DISTRICT JUDGE

14